IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD CLAYTON BUDGE,<br><br>Defendant. | **MEMORANDUM<br>DECISION AND ORDER**<br><br>Case No. 1:13-cr-0042-RJS<br><br>Judge Robert J. Shelby |

INTRODUCTION

Defendant Donald Clayton Budge moves the court to suppress evidence seized from a truck driven by Mr. Budge. (Dkt. 25.) On November 13, 2013, the court held an evidentiary hearing on Mr. Budge's motion to suppress and counsels for both parties were present. After careful consideration and for the reasons stated below, the court DENIES the motion.

BACKGROUND

**I.  The Traffic Stop**

In March 2013, Agent Don Johnson of the Weber-Moran Narcotics Strike Force received information from a confidential informant that Mr. Kenneth O'Rourke was at 1803 North Washington Boulevard in Ogden, Utah. (Dkt. 38 at 5.) Agent Johnson also received information from the confidential informant that Mr. O'Rourke was in possession of a handgun, and would be driving a red truck. (*Id.* at 15, 30.) At the time, Mr. O'Rourke had an outstanding drug charge and Mr. O'Rourke was also wanted for federal probation violations. (*Id.* at 5.) With that

information, Agent Johnson and other officers set up surveillance on the 1803 North Washington Boulevard residence. (*Id.* at 6.)

At around 4:00 p.m., Agent Johnson and his partner, Agent Jason Vanderwarf received information that a red truck was backing up and preparing to leave the surveilled residence. (*Id.* at 7-8, 40.) Agent Johnson testified that he observed the truck roll past the sidewalk without stopping and also roll into the roadway without stopping. (*Id.* at 8.) Agent Vanderwarf testified that the truck failed to stop prior to the sidewalk. (*Id.* at 8.) After pulling into the roadway, the truck began travelling north towards Agent Johnson and Agent Vanderwarf who were parked north of the 1803 North Washington Boulevard residence. (*Id.* at 8.) As the truck was driving towards them, Agent Johnson observed Mr. Budge driving the vehicle. Agent Johnson also personally identified Mr. O'Rourke as a passenger in the front seat. (*Id.* at 8-9, 64.)

Shortly thereafter, the Agents attempted to stop the truck. (*Id.* at 10.) Agent Johnson, Agent Vanderwarf, and Officer John Cox – a canine officer assigned to the Narcotics Strike Force – testified that Mr. Budge attempted to evade the officers before finally stopping the vehicle. (*Id.* at 14-15, 43-44, 65-66.)

## II. The Post-Stop Search

After the officers stopped the truck, Agent Johnson placed Mr. O'Rourke and Mr. Budge under arrest. (*Id.* at 15-16.) Agent Johnson searched Mr. O'Rourke and found a hypodermic needle with a clear liquid in it. (*Id.* at 16.) Agent Johnson later tested the clear liquid, which flashed positive for amphetamines. (*Id.*) Agent Johnson testified that he searched Mr. Budge and found a needle and a metal spoon. (*Id.*) The spoon had a brown substance on it. (*Id.*) Agent Johnson recognized these items as commonly used drug paraphernalia. (*Id.* at 16-17.)

2

Agent Johnson later tested the brown substance, which positive for heroin. (*Id.* at 16-17.) Agent Johnson also found a checkbook and an I.D. with the name "Carlos" on it. (*Id.*)

Around this time, Officer Cox deployed his drug dog Wyatt to sniff the outside of the truck. (*Id.* at 48, 55.) Wyatt gave a positive indication of drugs on the passenger side seam door. (*Id.* at 49.) Officer Cox testified that drug odor is not stationary, but often moves to areas of vacuum. (*Id.* at 55.) Thus, Office Cox considered Wyatt's positive alert to indicate that drugs were present somewhere in the vehicle, not necessarily just in or near the passenger side seam door. (*Id.*) After Wyatt gave the positive indication of drugs, officers searched the truck. (*Id.* at 67.) Officers found additional drug paraphernalia in the vehicle. (*Id.* at 68.) In addition, police officers opened the camper shell over the bed of the truck. (*Id.* at 67-68.) In the back of the truck with the camper shell over it, the officers found a backpack. (*Id.* at 67.) A pistol was discovered. (*Id.*)

### III.  Inventory Policies

Agent Johnson testified that the Narcotics Task Force seized the truck. In addition, Agent Johnson testified that he completed the paper work required for seizing and impounding the vehicle. (*Id.* at 20-21.)

ANALYSIS

### I.  The Traffic Violation

Mr. Budge contends police had no reasonable suspicion or probable cause to justify a traffic stop of Mr. Budge's truck. The Supreme Court has found that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that [a] traffic violation occurred." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). In

addition, as long as an officer suspects that the "driver is violating any one of the multitude of applicable traffic and equipment regulations," law enforcement officers may legally stop a vehicle. *Delaware v. Prouse*, 440 U.S. 648, 661 (1979); *see also United States v. Bostero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (holding that a stop is valid if based on an observed traffic violation).

Here, it is enough that both Agent Johnson and Agent Vanderwarf testified that they observed Mr. Budge violate Utah traffic laws by failing to stop prior to driving onto the sidewalk. Neither side disputes that this is a violation – Mr. Budge disputes only that this violation occurred. *See* Utah Code § 41-6a-970 ("the operator of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop: (1) the vehicle immediately prior to driving onto a sidewalk or onto a sidewalk area extending across the alley, building, private road, or driveway.").

Mr. Budge did not testify at the evidentiary hearing in support of his motion. As a result, the only evidence before the court is the testimony of the officers on the scene. Based upon the undisputed testimony, the court concludes the officers observed the traffic violation described in their testimony. This violation provided the officers with probable cause to stop the truck.

## II. Agent Johnson's Identification of Mr. O'Rourke

But even if the officers had not observed a traffic violation giving rise to a stop, neither party appears to dispute that the officers were otherwise permitted to stop the vehicle once Agent Johnson positively identified Mr. O'Rourke in the vehicle, as he was wanted on outstanding probation violations. Mr. Budge contends only that Mr. O'Rourke was lying low in the passenger seat as the truck travelled by the officers, making it impossible for the officers to see Mr. O'Rourke, as Agent Johnson claims.

4

Despite Mr. Budge's protestations, the court has no reasons to doubt the truthfulness of Agent Johnson's credible testimony that he identified Mr. O'Rourke in the passenger seat of the truck. Nor has Mr. Budge pointed to evidence or inconsistencies that would cast doubt on the veracity of Agent Johnson's testimony. The fact that Mr. O'Rourke may have been laying low in his seat does not preclude Agent Johnson from identifying him when the truck drove towards Agent Johnson, providing him a good view of the interior of the truck.

Accordingly, the court finds that the decision by the police to stop the truck driven by Mr. Budge based on the traffic violation and the identification of Mr. O'Rourke was reasonable.

### III. The Evasion of Law Enforcement

Mr. Budge appears to argue that since the attempt by the police officers to stop the truck was unreasonable, the court should ignore that testimony by law enforcement officers that Mr. Budge attempted to evade the officers. The United States appears to argue that Mr. Budge's attempt to evade police officers provides independent justification for the police stop. Having found that the decision by the police to stop the truck was reasonable based on the traffic violation and the identification of Mr. O'Rourke, the court need not determine whether the attempted evasion resulted in an independent justification for the stop.

### IV. Search of the Truck Bed

Mr. Budge next argues that the police may not search a truck nor any containers within it where the officers lack probable cause to believe contraband or evidence will be discovered inside. Since Wyatt gave a positive indication of drugs only on the passenger side seam door of the vehicle, Mr. Budge asserts the officers lacked probable cause to open the back of the camper to search the bed of the truck.

The Tenth Circuit, however, has specifically rejected this argument. In *United States v. Rosborough*, the defendant argued that "a canine alert toward the passenger area alone gives rise to probable cause to search only that area [and not the trunk of a car]." 366 F.3d 1145, 1152 (10th Cir. 2004). The Tenth Circuit rejected this argument, stating "[o]ur holdings with regard to drug dog alerts do not lend themselves to the level of exactness. A dog alert creates general probable cause to search a vehicle; it does not implicate the precision of a surgeon working with scalpel in hand. Thus, we hold that a canine alert toward the passenger areas of a vehicle gives rise to probable cause to search the trunk as well[.]" *Id.* at 1153. Here, similar to *Rosborough*, Wyatt gave a positive indication on the passenger area. This indication provided the police probable cause to open the camper to search the bed of the truck.

## V. Inevitable Discovery Doctrine

The United States argues, and Mr. Budge does not dispute, that even if the search of the truck bed was not justified, the evidence obtained by that search would still be admissible under the inevitable discovery doctrine. The Tenth Circuit has recognized that "the ultimate or inevitable discovery exception to the exclusionary rule … applies when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir.) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984). Specifically, those lawful means include warrantless inventory searches "conducted in accordance with established police department rules or policy and occur whenever an automobile is seized." *South Dakota v. Opperman*, 428 U.S. 364, 382 (1976).

Here, the United States argues, and Mr. Budge does not dispute, that an Ogden City Ordinance required officers to impound and remove Mr. Budge's vehicle once Mr. Budge and

Mr. O'Rourke were arrested. (*See* Ogden City Ordinace 10-8-1, Attachment A, Dkt. 44-1.) In addition, Ogden City Police Policy required the officers to inventory every compartment of the impounded vehicle, including "in the case of pickup trucks or utility vehicles, the bed, and any other compartment within or attached to the vehicle." (Ogden City Police Policy No. 31, Attachment B, Dkt. 44-2.) In addition, "[a]ll containers, locked or unlocked, discovered in the inventory process, i.e., bags, boxes, luggage, tool boxes, briefcases, etc., will be opened for inventory of their contents[.]" (*Id.*) The United States also contends, and Mr. Budge does not dispute, that once the police impounded the truck, they would have performed an inventory search, and during that search, the police would have opened the camper and found the pistol.

Thus, the court finds that the United States has established by a preponderance of the evidence that the pistol would have inevitably been discovered by the lawful inventory search.

CONCLUSION

For the foregoing reasons, the court DENIES Mr. Budge's motion to suppress. (Dkt. 25.)

SO ORDERED this 6th day of March, 2014.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

7